```
                  UNITED STATES DISTRICT COURT

                      DISTRICT OF HAWAII
```

| UNITED STATES OF AMERICA, | CR. NO. 20-00044 LEK |
|---|---|
| Plaintiff, | |
| vs. | |
| JASON TAGALOA (1), CRAIG PINKNEY (2), and JONATHAN TAUM (3), | |
| Defendants. | |

**ORDER DENYING DEFENDANT TAGALOA'S
MOTION TO DISMISS INDICTMENT AND DENYING DEFENDANT TAUM'S
AND DEFENDANT PINKNEY'S JOINDERS IN THE MOTION**

Defendant Jason Tagaloa ("Tagaloa") seeks dismissal of the criminal indictment filed against him and Defendants Craig Pinkney ("Pinkney") and Jonathan Taum ("Taum") on June 10, 2020. See Tagaloa's Motion to Dismiss Indictment, filed 5/16/22 (dkt. no. 141) ("Motion to Dismiss"). He submits that dismissal is appropriate because of prosecutorial misconduct during the questioning of a witness, Jordan DeMattos ("DeMattos"), during the grand jury proceeding. Taum and Pinkney join in the Motion to Dismiss. See Taum's Notice of Joinder in Response to Defendant Jason Tagaloa's Motion to Dismiss Indictment [ECF 141], filed 5/18/22 (dkt. no. 158); Pinkney's Joinder and Additional Authority in Response to Defendant Jason Tagaloa's Motion to Dismiss Indictment, filed 5/21/22 (dkt. no. 164). These joinders are joinders of simple agreement. See Minute

Order - EO: Court Orders Regarding the Joinders in Tagaloa's Motion to Dismiss, filed 5/23/22 (dkt. no. 171).

Plaintiff United States of America ("the Government") opposes the Motion to Dismiss and argues that the Motion to Dismiss is untimely and that the Government's questioning during the grand jury proceeding was neither improper nor constituted flagrant misconduct that would require dismissal.  See Government's Opposition to Defendant Tagaloa's Motion to Dismiss and Codefendants' Motions for Joinder, filed 5/23/22 (dkt. no. 174).  In his reply, Tagaloa argues there was good cause for his failure to file the Motion to Dismiss prior to the expiration for defense motions, and he reiterates that the improper questioning of Mr. DeMattos warrants dismissal.  See Tagaloa's Reply to the Government's Opposition to Defendant Tagaloa's Motion to Dismiss and Co-Defendants' Motions for Joinders, filed 5/26/22 (dkt. no. 192).

The Court has reviewed the submissions by the parties and determines that the Motion to Dismiss and the joinders therein are suitable for disposition without a hearing and therefore vacates the June 1, 2022 hearing.  See Local Rule LR7.1(c).

For the reasons set forth below, the Motion to Dismiss and the joinders therein are denied.

**BACKGROUND**

This matter arises out of an Indictment filed on June 10, 2020 against Tagaloa, Pinkney and Taum (collectively "Defendants") in which they are charged with deprivation of rights under color of law in violation of 18 U.S.C. §§ 242 and 2 on or about June 15, 2015 ("Count 1"); deprivation of rights under color of law in violation of 18 U.S.C. § 242 on or about June 15, 2015 ("Count 2"), and conspiracy to obstruct justice in violation of 18 U.S.C. § 371 on or about and between June 15, 2015 and December 20, 2016 ("Count 3"); as against Tagaloa only, obstruction by false report on June 15, 2015 in violation of 18 U.S.C. § 1519 ("Count 4"); as against Pinkney only, obstruction by false report on June 15, 2015 in violation of 18 U.S.C. § 1519 ("Count 5"); and as against Taum only, obstruction by false report on June 15, 2015 in violation of 18 U.S.C. § 1519 ("Count 6"). See Indictment, filed under seal 6/10/20 (dkt. no. 1). The Indictment was unsealed on June 30, 2020. See Entering Order, filed 6/30/20 (dkt. no. 7).

Defendants are alleged to have physically assaulted an individual identified as "Inmate 1," on or about June 15, 2015, at two separate times and in two different locations at the Hawaii Community Correctional Center ("HCCC"). See Indictment at Counts 1 and 2, ¶¶ 8-9. At the time of the alleged assaults, Defendants were officers employed by the State of Hawai`i

3

Department of Public Safety and worked as adult correctional officers at HCCC.  See id. at ¶¶ 1-2.  They are alleged to have conspired to coordinate their responses to an internal investigation of the alleged assaults.  See id. at Count 3, ¶¶ 10-12.  Tagaloa is alleged to have made a false entry in a record and document with the intent to impede the investigation into the alleged assaults by entering false information in the incident report ("IR") and use of force report ("UFR") that he wrote and submitted.  See id. at Count 4, ¶ 13.  Pinkney is alleged to have made a false entry in a record and document with the intent to impede the investigation into the alleged assaults by entering false information in the UFR that he wrote and submitted.  See id. at Count 5, ¶ 14.  Taum is alleged to have made a false entry in a record and document with the intent to impede the investigation into the alleged assaults by entering false information in the IR and UFR that he wrote and submitted. See id. at Count 6, ¶ 15.

## STANDARD

> The grand jury has historically been independent of both the prosecution and the courts, In re Grand Jury Investigation of Hugle, 754 F.2d 863, 864 (9th Cir. 1985), and as an independent entity the grand jury has broad powers to investigate matters before it, United States v. Sells Engineering, Inc., 463 U.S. 418, 423-24, 103 S. Ct. 3133, 3137-38, 77 L. Ed. 2d 743 (1983).  Because of separation of powers concerns, courts very rarely intrude on the conduct of grand jury proceedings.  United States

4

> v. Cederquist, 641 F.2d 1347, 1352-53 (9th Cir. 1981). Under limited circumstances, however, a court may dismiss an indictment for prosecutorial misconduct before the grand jury based on due process grounds, see, e.g., United States v. Basurto, 497 F.2d 781, 785-86 (9th Cir. 1974), or the court's inherent supervisory powers, see, e.g., United States v. Samango, 607 F.2d 877, 881 (9th Cir. 1979); Basurto, 497 F.2d at 793-94 (Hufstedler, J., concurring specially). A defendant who challenges the indictment on either ground bears a heavy burden to demonstrate that the prosecutor engaged in flagrant misconduct deceiving the grand jury or significantly impairing its exercise of independent, unbiased judgment. United States v. De Rosa, 783 F.2d 1401, 1405, 1406 (9th Cir. 1986), *cert. denied*, -- U.S. --, 106 S. Ct. 3282, 91 L. Ed. 2d 57 (1986); United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir.), *cert. denied*, 461 U.S. 932, 103 S. Ct. 2097, 77 L. Ed. 2d 305 (1983). Moreover, the defendant must show that the prosecutorial misconduct prejudiced him. Al Mudarris, 695 F.2d at 1186-87; United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978). . . .

United States v. Venegas, 800 F.2d 868, 869-70 (9th Cir. 1986); see also Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.").

## **DISCUSSION**

Tagaloa argues that the questioning of a witness; specifically, Jordan DeMattos ("DeMattos"), before the grand jury was done in such a heavy-handed manner that it usurped the grand jury's ability to make its decision in an independent manner. Tagaloa contends:

5

> In this case, the prosecutor continually requested that the witness, Jordan DeMattos, testify that every use of force applied, or what the defendants did, was "unlawful". See Jordan DeMattos, Grand Jury 6/10/20 at 42-44, 47, 50, 52, 60, 70, 91, 93, attached hereto as Exhibit "B". This is a conclusion that should have been reserved for the Grand Jury to make in its deliberations. The icing came when the prosecutor requested that DeMattos agree that the force used was "excessive". Id. at 46.

[Mem. in Supp. of Motion to Dismiss at 6.] He cites United States v. Samango, 607 F.2d 877 (9th Cir. 1979), in support of his proposition that, for the grand jury to be independent in its determination of whether there is probable cause that a crime has been committed, "limits must be set on the manipulation of grand juries by over-zealous prosecutors." Id. at 882. Tagaloa contends that Mr. DeMattos, at the time of his grand jury testimony, was intending to enter into a plea agreement with the Government.

Relevant to the issue at hand, Mr. DeMattos testified: that he was an "Adult Correctional Officer III" employed at HCCC in June 2015; [Motion to Dismiss, Decl. of Counsel, Exh. B (Testimony of Jordan DeMattos taken on June 10, 2020 before the United States Grand Jury ("DeMattos Testimony")) at 7:22-23; 8:6-7;] that he worked at HCCC with Tagaloa, Pinkney and Taum; [id. at 8:13-19;] that Taum was his, Tagaloa and Pinkney's supervisor at HCCC; [id. at 9:5-10;] that he received and successfully completed training for his position starting in

2014; [id. at 9:11-17;] that he received Basic Correctional Training and that included training on use of force; [id. at 12:19-13:11;] that he also attended several courses on how to use force properly with approved techniques and that was called PPCT training; [id. at 13:15-19;] that the PPCT training included learning proper techniques on how to use force on an inmate when appropriate and using certain types of strikes that are not intended to injure but to distract; [id. at 14:3-17;] that he received the Student Manual that was used in training and it contained basic rules about using force and about the reasonable use of force versus excessive force; [id. at 15:9-17, 15:21-16:4;] that he was instructed to increase or decrease force as appropriate in response to the situation, to terminate as soon as no longer necessary, and to continue to use force when you do not need to do so is excessive; [id. at 17:20-18:6;] and that he had an obligation to be accurate, truthful, and detailed when reporting any use of force, [id. at 18:11-18].

With Mr. DeMattos' experience, background and training in mind, the Court now examines the portions of his testimony that Tagaloa contends impermissibly biased the grand jury. These consist of essentially four areas of questioning:

The first area relates to a video recording and questioning about what is depicted - Mr. DeMattos was shown a video recording depicting use of force on an inmate, [id. at

7

35:4-24,] and he identified the persons in the video recording, including Tagaloa, Pinkney and Taum, [id. at 36:22-37:23]. He was asked to identify who inflicted certain punches or strikes to the inmate, [id. at 39:1-16,] and whether the strikes were "trained strikes," [id. at 39:17-18,] or "a lawful strike or technique," [id. at 40:8-9]. He also identified the video recording as depicting kicks to the inmate's head, [id. at 41:1-5,] and he was asked whether those types of kicks were "an approved or trained type of strike" or a lawful one, [id. at 41:13-16; see also id. at 44:1-12]. DeMattos was asked to view the video recording and identify a series of punches by Tagaloa and by Pinkney, [id. at 44:8-11; 47:1-10,] and to state whether these punches were "trained blows" and whether they were lawful, [id. at 44:18-21; 47:12-15; 50:14-24].

The second area pertains to whether the striking of the inmate would have stopped - DeMattos was asked whether he thought that Tagaloa, Taum and Pinkney would have stopped striking the inmate if he (DeMattos) had stopped "performing illegal strikes" while one of them was holding the inmate down, and if he said they should stop. [Id. at 52:10-16.] DeMattos stated that he "had the opportunity" to stop, but did not, [id. at 52:17,] and, if he had stopped, he "would have hoped" that Tagaloa might have stopped; and that, if Taum had told them to

8

stop, then he, Tagaloa and Pinkney would have complied, [id. at 52:18-25].

The third area concerns the actions or inactions of the inmate and whether the punches given to the inmate were justified - DeMattos testified: that, after the inmate was taken down Hallway F to Cell 7, Tagaloa struck the inmate in his head and with a closed fist and that such a strike is not a trained strike; [id. at 59:3-20;] that the inmate was not resisting at the time and was handcuffed; [id. at 59:23-25;] that the inmate was not out of control or doing anything that required use of a strike; [id. at 60:1-9;] and that the strike was unlawful, [id. at 60:10-11].

The fourth area involves reporting on a URF report and a video recording of him meeting with Defendants about use of force - DeMattos testified: that he did not include in the URF report that "nearly all of the[] strikes were inconsistent with training" nor did he indicate that they were "unlawful strikes"; [id. at 70:7-12;] that he did not know that part of his meeting with Defendants was filmed; [id. at 88:1-4;] that Taum led the meeting and was trying to coach them what to say about the strikes; [id. at 88:23-24; 89:3-4;] that, at the meeting, Taum was asking questions as if Taum was an investigator asking questions; [id. at 90:10-16;] and that he understood that this

meeting was against policy and unlawful, and "could thwart or obstruct an investigation[,]" [id. at 91:7-13].

The rules of evidence do not apply to grand jury proceedings. Costello v. United States, 350 U.S. 359, 363 (1956) (holding that hearsay evidence permissible in grand jury proceeding). It is, however, instructive to note that Mr. DeMattos' testimony is entirely permissible under those rules. Rule 701 provides that a lay witness may give testimony in the form of an opinion. Fed. R. Evid. 701. Law enforcement officers can provide lay witness opinion testimony that is rationally based on their direct perception of events, if the opinion may be helpful to the jury. United States v. Gadson, 763 F.3d 1189, 1207 (9th Cir. 2014) (citing United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007) (agent's "understanding of ambiguous phrases" based on the "direct perception of several hours of intercepted conversations" along with "direct observation" of defendants and "other facts he learned during the investigation" resulted in testimony that "proved helpful to the jury in determining what the [co-conspirators] were communicating during the recorded telephone calls")). DeMattos was a percipient witness in that he participated, according to his testimony, in the punching and kicking of the inmate. He may therefore permissibly testify as to what he directly perceived. Additionally, DeMattos testified

10

at some length about his training and experience as an adult correctional officer in using permissible restraints on inmates and, therefore, his testimony established the type of "specialized knowledge" governed by Rule 702 regarding expert opinion testimony. See Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ."). Mr. DeMattos' testimony about whether the strikes, punches and kicks that he observed and that he caused were lawful or not is clearly within his specialized knowledge as an adult correctional officer. As with any witness, the grand jury could have accepted or rejected Mr. DeMattos' testimony, in whole or in part. Therefore, the prosecutor's questioning before the grand jury about the lawfulness of the strikes and kicks inflicted upon an inmate was permissible and did not impermissibly usurp the role of the grand jury. In short, the questioning was not misconduct.

Tagaloa bears the "heavy burden to demonstrate that the prosecutor engaged in flagrant misconduct [in] deceiving the grand jury or significantly impairing its exercise of independent, unbiased judgment." See Venegas, 800 F.2d at 869-70. That burden has not been met here.

## CONCLUSION

For the foregoing reasons, Tagaloa's Motion to Dismiss Indictment, filed May 16, 2022, is HEREBY DENIED, and Taum's and Pinkney's joinders of simple agreement, filed May 18, 2022 and May 21, 2022, respectively, are also DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 27, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA VS. JASON TAGALOA, ET AL; CR 20-00044 LEK; ORDER DENYING DEFENDANT TAGALOA'S MOTION TO DISMISS INDICTMENT AND DENYING DEFENDANT TAUM'S AND DEFENDANT PINKNEY'S JOINDERS IN THE MOTION**